UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      Case No. 1:07-CR-22

      v.                             Hon. Janet T. Neff

GARY LEE GRIGGS,

        Defendant.
_____/

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S FIRST STEP ACT MOTION
FOR SENTENCE REDUCTION**

Now comes the United States of America, through its attorneys, Andrew Byerly Birge, United States Attorney for the Western District of Michigan, and B. René Shekmer, Assistant United States Attorney, and states as follows, in response to Defendant Gary Lee Griggs' First Step Act of 2018 Motion for sentence reduction (R.76) and his counsel's supplemental brief in support of his motion (R.79):

Defendant Gary Griggs is not eligible for consideration for sentence reduction relative to Count Two, possession with intent to distribute more than five grams of cocaine base at the Grand Rapids Central High School, a public secondary school, because his sentence was the result of a binding Rule 11(c)(1)(C) plea agreement worked in concert with the local court systems with full knowledge of the binding federal sentencing range of 20 to 25 years in prison.

I.       Relevant Procedural History

On November 21, 2007, pursuant to a binding Rule 11(c)(1)(C) plea agreement, Gary Griggs entered a plea of guilty to Count Two of the Indictment charging possession with intent to distribute more than five grams of cocaine base at the Grand Rapids Central High School, a

public secondary school, in violation 21 U.S.C. §§ 860, 841(a)(1) and 841(b)(1)(B)(iii).  (R.5, Indictment; R.22, Notice of Prior Felony Drug Conviction; R.30, Plea Agreement; R.38, Plea Transcript.)   The enhanced statutory penalty for the cocaine base offense at a school, in violation of 21 U.S.C. § 860, was life in prison, due to Griggs' two prior felony drug convictions.  (R.5, Indictment; R.22, Notice of Prior Felony Drug Conviction; R.30, Plea Agreement; R.38, Plea Transcript.)   However, the binding plea agreement called for a sentence of "imprisonment between 240 months (20 years) and 300 months (25 years) based on his conduct, criminal history, and cooperation with law enforcement."   (R.30, Plea Agreement, Page ID#99.)   The binding plea agreement further stated:

> For the consideration in this plea agreement and in accordance with the terms set forth in his plea agreement with the Kent County Prosecutor's Office, the Defendant has agreed to plead guilty in the 17th Circuit Court, Kent County, Michigan, to a charge or charges addressing Defendant's role in the deaths of Dontae Ward on or about July 29, 2005 and/or Charles Johnson on or about March 31, 2006.   The Defendant understands that his plea agreement in the 17th Circuit Court, Kent County, Michigan, will include a sentence cap of not more than 20 years in prison, and a provision that his state sentence be served concurrently with his federal sentence in the above-captioned case.   The Defendant understands that he must take and pass a polygraph examination or examinations confirming his admitted role in the deaths of Dontae Ward and Charles Johnson, and he further understands that this is a material condition of his plea agreement with the United States Attorney's Office in the above-captioned case, and his plea agreement with the Kent County Prosecutor's Office.

(R.30, Plea Agreement, Page ID#101.)

Griggs' guideline computation was as follows:

Base offense level           26      (5.95 grams of cocaine base + 2 levels for school)

Possession of a firearm      +2

Acceptance of responsibility  -3

      Total Offense Level      25

(PSR at ¶ 38-48; R.73, Sentencing Transcript, Page ID#261.) Griggs had 13 criminal history points which placed him in criminal history category VI. (PSR at ¶ 74.) Total offense level 25 at criminal history category VI resulted in a guideline sentencing range of 110 to 137 months in prison. (PSR at ¶ 126; R.73, Sentencing Transcript, Page ID#261.) However, pursuant to USSG § 5G1.1(b), Griggs' guideline sentencing range became the statutory mandated life in prison. (PSR at ¶ 126; R.73, Sentencing Transcript, Page ID#261-262.)

      The Government filed a USSG § 5K1.1 and 18 U.S.C. § 3553(e) motion on behalf of Griggs wherein the Government "recommend[ed] that, based on his substantial assistance, defendant Gary Lee Griggs receive a reduction in his sentencing guidelines range from life imprisonment to 240 to 300 months." (R.41, § 5K1.1 Motion; R.42, Brief in Support, Page ID#159.) This Court granted the motion. (R.73, Sentencing Transcript, Page ID#262-263.)

      During sentencing, the Government stated:

> Diante (sic) Ward's mom who is here today, she would not have had justice in this case had Mr. Griggs not stepped up and confessed to that murder. Mr. Griggs acknowledged his involvement in the killing of Mr. Ward, and his involvement in other shootings, as well as solved, six other shootings/homicides here in the Grand Rapids area. His assistance in helping us further our investigation in both gang violence and gang related homicides has been in a word extraordinary. And it's for that reason that we were able to convince, I was able to convince my supervisors that for a young man, 26 years old, asking the Court to consider, respectfully consider, and I appreciate the Court accepting a binding plea agreement to 25, 20 to 25 years, would be appropriate in this case.

(R.73, Sentencing Transcript, Page ID#268-269.)

      The Court stated:

> Well, as I've indicated, this is an unusual and at least in my brief experience on this bench, a rather extraordinary case.

3

> But that being said, I think it's worthwhile to go through the usual sentencing procedures to give some context to what's going to happen here.
> The advisory guidelines are sort of out of the picture here in the sense that we have a binding plea agreement, which I've accepted. But the factors under 3553(a) I think really need to be spoken to to some extent to give some sense of where within that relatively limited range of 20 to 25 years the sentence ought to fall.

(R.73, Sentencing Transcript, Page ID#268-269.)

Griggs was sentenced on July 25, 2008, "to be imprisoned for a total term of two-hundred fifty-two (252) months to run concurrently to the sentences imposed by the 17th Circuit Court, Kent County, Michigan, in Case Numbers 06-12785-FH and 08-03208-FC," eight years of supervised release, a fine of $4,000, and a $100 special assessment. (R.45, Judgment, Page ID#170-175; R.73, Sentencing Transcript, Page ID#273-275.) No direct appeal was taken.

Griggs filed a 28 U.S.C. § 2255 motion. (R.52, § 2255 Motion; R.53, Memorandum.) On May 3, 2010, this Court denied Griggs' motion. (R.57, Opinion; R.58, Order.)

Griggs filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Guideline Amendment 782. (R.61, § 3582 Motion-Amendment 782.) On February 19, 2015, the district court denied Griggs' motion. (R.75, Opinion and Order.)

Griggs is currently in the custody of the Attorney General. His current projected release date from prison is December 11, 2028, according to the Bureau of Prisons website.

II.     First Step Act

On December 21, 2018, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("First Step Act"), was signed into law by the President. Section 404 of the First Step Act allows district courts to consider a sentence reduction for defendants whose cocaine base offenses were committed before August 3, 2010, and whose sentences would have been lower under the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 ("Fair Sentencing Act"), that

4

lowered the threshold quantities triggering different statutory penalties for certain offenses involving cocaine base (crack cocaine). The Fair Sentencing Act was enacted on August 3, 2010, and did not apply retroactively. However, in *Dorsey v. United States*, 567 U.S. 260 (2012), decided on June 21, 2012, the Court held that the Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred.

The First Step Act applies to "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010," and provides that the court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Section 404(c) states, "[n]o court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."

Section 2 of the Fair Sentencing Act made the following changes to the threshold quantities of cocaine base triggering different statutory penalties under 21 U.S.C. § 841(b)(1) and 21 U.S.C. § 960(b):

| BEFORE | Statutory Penalties | AFTER |
| --- | --- | --- |
| 5 g | 5-yr min.; 40-yr max. (§§ 841(b)(1)(B) & 960(b)(2)) | 28 g |
| 50 g | 10-yr min.; life max (§§ 841(b)(1)(A) & 960(b)(1)) | 280 g |

Section 3 of the Fair Sentencing Act eliminated the provision in 21 U.S.C. § 844(a) that had imposed a five-year statutory-minimum sentence for possession of cocaine base, if the offense involved five grams or more.

In sum, under the First Step Act, a defendant who was sentenced for a cocaine base offense before August 3, 2010, and whose statutory sentencing exposure would be different under Sections 2 or 3 of the Fair Sentencing Act, may be considered for a sentence reduction. Under Section 404(b) of the First Step Act, a sentence reduction may be initiated "on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court."

Neither *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which barred increase of a statutory-maximum sentence based on facts found by a judge alone, nor *Alleyne v. United States*, 570 U.S. 99 (2013), which held the same regarding imposition of an increased statutory-minimum penalty, are applicable to First Step Act motions. The original sentences were lawful at the time imposed and remain lawful after passage of the First Step Act.

In the ordinary case before *Apprendi* and before the Fair Sentencing Act, a jury did not make a quantity finding, and the court determined the relevant quantity at sentencing. After *Apprendi*, including before passage of the Fair Sentencing Act, the jury ordinarily made a finding regarding the threshold quantity stated in the statute, for purposes of establishing the statutory-maximum penalty, but the court could and did impose statutory-minimum penalties regardless of any jury finding. At the time, that practice was authorized by *Harris v. United States*, 536 U.S. 545 (2002).

*Alleyne*, requiring jury findings to support an increased statutory minimum, was not decided until nearly three years after the Fair Sentencing Act was enacted. Thus, any jury

finding regarding quantity prior to the Fair Sentencing Act was not binding on the sentencing court with respect to determining the statutory minimum, and no defendant sentenced at that time received the benefit of *Alleyne*. Later, appellate courts unanimously concluded that neither *Apprendi* nor *Alleyne* applied retroactively to afford relief on collateral review. Decisions holding that *Alleyne* does not apply retroactively include *Butterworth v. United States*, 775 F.3d 459, 464–65 (1st Cir. 2015); *United States v. Redd*, 735 F.3d 88, 91–92 (2d Cir. 2013) (per curiam); *United States v. Reyes*, 755 F.3d 210, 212–13 (3d Cir. 2014); *United States v. Olvera*, 775 F.3d 726, 730 & n.12 (5th Cir. 2015); *In re Mazzio*, 756 F.3d 487, 489–91 (6th Cir. 2014); *Crayton v. United States*, 799 F.3d 623, 624 (7th Cir. 2015); *Walker v. United States*, 810 F.3d 568, 574 (8th Cir. 2016); *Hughes v. United States*, 770 F.3d 814, 817–19 (9th Cir. 2014); *In re Payne*, 733 F.3d 1027, 1029–30 (10th Cir. 2013); *Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1285–86 (11th Cir. 2014).

Nothing in the First Step Act suggests that Congress intended to adopt a different methodology now. The First Step Act only directs the court to examine a sentence as if Sections 2 and 3 of the Fair Sentencing Act were in effect at the time, not to change the manner of determining drug quantity. And such a determination at this time does not offend *Apprendi* or *Alleyne*, as it does not involve any *increase* in a sentence based on judge-found facts. To the contrary, the First Step Act only authorizes a court to "reduce" a sentence, and further makes clear that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *See also Dillon v. United States*, 560 U.S. 817 (2010) (holding that a court need not apply *Booker v. United States*, 543 U.S. 220 (2005), which rendered the Guidelines advisory, to remedy a violation of *Apprendi* where the court is considering only whether to reduce a sentence based on a retroactive guideline amendment).

7

Accordingly, a court presented with a sentence reduction motion under the First Step Act should determine from the record the quantity involved in the offense, and should deny relief if that quantity under the Fair Sentencing Act supports the same penalty range applied at the original sentencing proceeding; that is, the crime involved 28 grams or more of cocaine base for a defendant sentenced under Section 841(b)(1)(B), or 280 grams or more for a defendant sentenced under Section 841(b)(1)(A). This assessment should be made on a count-by-count basis, where multiple counts of conviction involve cocaine base. A drug quantity finding may be derived from a specific finding of the district court at sentencing (either during the hearing or the statement of reasons), from a plea agreement, from the uncontested finding of a presentence report, and from a trial record.

Otherwise, defendants who receive a sentencing reduction under the First Step Act will receive a windfall not available to defendants prosecuted under the Fair Sentencing Act, offending "the need to avoid unwarranted sentencing disparities among" similarly situated offenders under 18 U.S.C. § 3553(a)(6), and the need for a sentence to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense" under § 3553(a)(2)(A). *See Dorsey*, 567 U.S. at 276-79 (expressing the importance of consistency in sentencing similarly situated offenders when determining the retroactive application of a statutory amendment). That is because, following enactment of the Fair Sentencing Act, juries were asked to make quantity determinations based on that Act's new thresholds for purposes of establishing applicable statutory maximums. Moreover, prior to *Alleyne*, courts could and did impose higher statutory minimums under the Fair Sentencing Act based on their own conclusions regarding drug quantity. Accordingly, defendants prosecuted under the Fair Sentencing Act received sentences based on quantity determinations keyed to the thresholds set

forth in that Act. The same should be true of defendants who receive the retroactive benefit of that Act.

Section 404(c) of the Act makes clear that a sentencing reduction is discretionary. *See* First Step Act of 2018, Pub. L. No. 115-391, § 404(c), 132 Stat. 5194, 5222 (2018) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). In the event that a defendant meets the qualifications for consideration of a sentence reduction, the court should assess the ordinary considerations pertinent to sentencing in determining whether to exercise its discretion by granting a sentence reduction. These considerations are set forth in Section 3553(a), which requires consideration of the applicable guideline range as well as all other pertinent information about the offender's history and conduct. In addition, under *Pepper v. United States*, 562 U.S. 476 (2011), the court may consider post-offense conduct, either positive or negative, in assessing whether to adjust a previously imposed sentence.

III.    The First Step Act as Applied to this Defendant

On May 13, 2019, Griggs filed a First Step Act motion seeking reduction of his sentence. (R.76, First Step Motion.) On June 12, 2019, court-appointed counsel filed a supplemental brief. (R.79, Supplemental Brief.)

The Government notes that defense counsel relies on the First Step Act motion opinion *United States v. Davis*, No. 07-CR-245S, 2019 WL 1054554, at * (W.D.N.Y. Mar. 6, 2019), for the proposition that a categorical approach to First Step Act eligibility should be used. However, there is no need to reference a district court decision from the Western District of New York for that position. In *United States v. Boulding*, ___ F.Supp.3d ___, 2019 WL 2135494 (W.D. Mich. May 16, 2019), the Court held that eligibility for a reduction of sentence pursuant

to the First Step Act "turns entirely on the categorical nature of the prior conviction," i.e., whether the defendant was charged and convicted of an offense involving 21 U.S.C. § 841(b)(1)(A)(iii) or § 841(b)(1)(B)(iii). The government has filed a notice of appeal in *Boulding* (#19-1706) and continues to contend that eligibility depends on the quantity of drugs involved in the "violation," as argued in the government's briefs in *Boulding* and other cases, pending a ruling by a higher court. Nevertheless, since Griggs' "violation" involved 5.95 grams of cocaine base at a school, but for the Rule 11(c)(1)(C) plea agreement, he would appear to be eligible under either reading of the statute. *See United States v. Bean*, 2019 WL 2537435, n. 8 (W.D. Mich. June 20, 2019) (Jonker, C.J.).

The First Step Act allows the court to consider what the sentence would be had the statutory mandatory minimums and maximums as amended by the Fair Sentencing Act been in effect at the time the defendant was originally sentenced. As noted above, Griggs' was responsible for 5.95 grams of cocaine base at a school. Any person who violates 21 U.S.C. § 841(a)(1) by possessing with intent to distribute a controlled substance within 1,000 feet of a school, is subject to twice the maximum punishment authorized by 21 U.S.C. § 841(b); at least twice any term of supervised release authorized by 21 U.S.C. § 841(b); and a fine of up to twice the amount authorized by 21 U.S.C. § 841(b), for a first offense. 21 U.S.C. § 860(a). Furthermore, "[e]xcept to the extent a greater minimum sentence is otherwise provided by section 841(b) of this title, a person shall be sentenced under this section to a term of imprisonment of not less than one year," for a first offense. 21 U.S.C. § 860(a).

At the time of Griggs' sentencing, 5 grams or more of cocaine base triggered the 5 years to 40 years in prison statutory penalty range pursuant to 21 U.S.C. § 841(b)(1)(B). Then, as Griggs' possession with intent to distribute occurred at a school, the statutory penalty range

became 10 years to 80 years in prison. 21 U.S.C. § 860(a). Finally, when enhanced by his two prior felony drug convictions, his statutory penalty range became mandatory life in prison.

After the Fair Sentencing Act, 5.95 grams of cocaine base results in statutory penalty range of up to 20 years in prison, which, when enhanced by a prior a felony drug conviction, becomes a statutory penalty range of up to 30 years in prison. 21 U.S.C. § 841(b)(1)(C). Then, as Griggs' possession with intent to distribute occurred at a school, the statutory penalty range would become not less than 1 year and not more than 60 years in prison. 21 U.S.C. § 860(a).

Therefore, without consideration of the binding Rule11(c) plea agreement, Griggs would be eligible for consideration of a discretionary reduction of his sentence as retroactive application of the Fair Sentencing Act would change his statutory minimum and maximum sentencing range.

Griggs' amended guideline computation is as follows, using the most recent version of USSG § 2D1.1:

| | | |
|---|---|---|
| Base offense level | 16 | USSG § 2D1.1 - 5.95 grams of cocaine base |
| At a school | +2 | USSG § 2D1.2(a)(1) |
| Possession of a firearm | +2 | |
| Acceptance of responsibility | -3 | |
| Total Offense Level | 17 | |

Total offense level 17 at criminal history category VI results in a guideline sentencing range of 51 to 63 months in prison.

This case is unusual in that it involves a Rule 11(c)(1)(C) plea agreement wherein the parties agreed that a sentence within a specific range was the appropriate disposition of the case. The parties agreed and the Court accepted that an appropriate sentence was "imprisonment

between 240 months (20 years) and 300 months (25 years) based on his conduct, criminal history, and cooperation with law enforcement." (R.30, Plea Agreement, Page ID#99.) There is no guideline sentencing range of 240 to 300 months in prison. That range was determined outside the guidelines because the statutory penalty controlled the sentence.

In *Hughes v. United States*, 138 S. Ct. 1765, 1775 (2018), a case involving a 18 U.S.C. § 3583(c)(2) motion for sentence reduction pursuant to a Guidelines Amendment 782, the Supreme Court held that "[t]o resolve the uncertainty that resulted from this Court's divided decision in *Freeman*, the Court now holds that a sentence imposed pursuant to a Type-C agreement is "based on" the Defendant's Guidelines range so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement." "If the Guidelines range was not 'a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement,' *Freeman*, *supra*, at 530, 131 S.Ct. 2685, then the defendant's sentence was not based on that sentencing range, and relief under § 3582(c)(2) is unavailable." *Hughes*, 138 S. Ct. 1776. "And that is so regardless of whether a defendant pleaded guilty pursuant to a Type–C agreement or whether the agreement itself referred to a Guidelines range." *Id*. "The statutory language points to the reasons for the sentence that the district court imposed, not the reasons for the parties' plea agreement." *Id*.

In Griggs' case, the sentence of 252 months in prison, within the agreed upon range of 20 to 25 years in prison, was not "based on" the Defendant's Guidelines range because the Guidelines range was not part of the framework the district court relied on in imposing the sentence or accepting the agreement. As this Court stated at the time of sentencing:

> Well, as I've indicated, this is an unusual and at least in my brief experience on this bench, a rather extraordinary case.

12

> But that being said, I think it's worthwhile to go through the usual sentencing procedures to give some context to what's going on here.
>
> The advisory guidelines are sort of out of the picture here in the sense that we have a binding plea agreement, which I've accepted. But the factors under 3553(a) I think really need to be spoke to to some extent to give some sense of where within that relatively limited range of 20 to 25 years the sentence ought to fall.

(R.73, Sentencing Transcript, Page ID#270.)

In fact, to claim that the Guidelines range was in any way relevant is disingenuous. The statutory mandatory life in prison was all encompassing. Griggs' otherwise applicable guideline range was 110 to 137 months in prison. (PSR at ¶ 126; R.73, Sentencing Transcript, Page ID#261.) Pursuant to USSG § 5G1.1(b), Griggs' guideline sentencing range became the statutory mandated life in prison. (PSR at ¶ 126; R.73, Sentencing Transcript, Page ID#261-262.) The statutory mandatory minimum sentence was the dog that wagged the Guidelines tail, not the other way around. No matter what the Guidelines range was, it was only with release of the statutory mandatory minimum sentence of mandatory life that any sentence of less than life in prison was possible. Thus, this Court accepted the Rule 11(c)(1)(C) binding plea agreement because it allowed the Court to sentence a 26 year old man, charged with cocaine base trafficking at a school, who had admittedly killed two people, with something less than life in prison.

That said, the First Step Act is not about Guidelines Amendments and, therefore, *Hughes* is not particularly relevant. The First Step Act is about statutory mandatory minimum and maximum sentences and their effects on defendants sentenced prior to the Fair Sentencing Act, whether through the Guidelines or not. Therefore, the question is whether the First Step Act gives the defendant authority to seek a sentence reduction in violation of his binding plea agreement and gives the Court authority to reduce a binding Rule 11(c)(1)(C) sentence. The

13

Government believes it does not and, further, even if it did, it would be unwise to disturb the original binding sentence given that this binding plea agreement also involved consideration of local court pleas and sentences all considered in concert with the federal binding plea agreement.

    IV.    <u>No Hearing Required</u>

The court is not required to hold a hearing to consider a sentencing reduction motion under Section 404 of the First Step Act. The reduction is authorized by the Act and by 18 U.S.C. § 3582(c)(1)(B), which states: "The court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon*, 560 U.S. at 827–28 (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under § 3582(c)(2) regarding the imposition of a sentencing modification).

However, the court should provide an explanation of its decision, which may be accomplished by a form. The Supreme Court addressed the matter in *Chavez-Meza v. United States*, 138 S. Ct. 1959 (2018). There, the government argued that no explanation is required upon the denial of a § 3582(c)(2) motion. The Supreme Court did not resolve that argument, because it held that the scant explanation given in the case before it was sufficient even in an original sentencing proceeding. In that straightforward case, where the original range was 135–168 months, and the court originally imposed a sentence of 135 months, the range dropped to 108–135 months, and the court imposed a new term of 114 months. The Supreme Court held that the use of a preprinted and nationally circulated form, AO-247, certifying that the judge had

"considered" the defendant's "motion" and had "tak[en] into account" the Section 3553(a) factors and the relevant Guidelines policy statement, was a sufficient explanation in this case of the Section 3582(c)(2) decision, and no greater explanation was required to state why the court had not reduced the sentence even further.

VI.     Conclusion

Griggs is not eligible for consideration for a sentence reduction pursuant to the Fair Sentencing Act.   And any reduction in the original Rule 11(c)(1)(C) sentence would be not be fair to the local court system which entered into plea agreements and sentences with Griggs with full understanding of the binding federal plea agreement and full knowledge of the original sentencing range of 20 to 25 years in federal prison.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated:   July 10, 2019

 /s/ B. Rene Shekmer
B. RENE SHEKMER
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404